NOT DESIGNATED FOR PUBLICATION

No. 120,352

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HENRY L. FIGURES JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed May 1, 2020. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., BUSER and BRUNS, JJ.


PER CURIAM: Henry L. Figures, Jr., appeals from his jury conviction for felony fleeing or attempting to elude a law enforcement officer. The jury also convicted him of two other charges. On appeal, Figures contends that the Kansas fleeing and eluding statute—K.S.A. 2015 Supp. 8-1568(b)(1)(E)—is unconstitutionally vague. However, we find that K.S.A. 2015 Supp. 8-1568(b)(1)(E) provides fair notice about the prohibited conduct and adequately protects against arbitrary enforcement. Accordingly, we conclude that K.S.A. 2015 Supp. 8-1568(b)(1)(E) is not unconstitutionally vague and we affirm Figures' convictions.

1

In the early morning hours of October 24, 2015, Wichita Police Officers Jonathan Estrada and Jeffrey Walters—who were riding together in the same patrol vehicle— observed a Lincoln Town car leave a motel on North Broadway where they had received multiple complaints of drug and prostitution activity. Officer Walters ran the license plate on the vehicle. After the dispatcher reported that the license plate was registered to a Dodge Grand Caravan, Officer Estrada activated his emergency lights and stopped the vehicle.

Officer Estrada approached the driver's side of the car and made contact with the driver, who identified himself as Henry Figures. The officer then determined that nobody else was in the car. Figures told Officer Estrada that he did not have a driver's license, and Officer Estrada confirmed that his driver's license had been suspended.

Officer Estrada and Officer Walters asked Figures to step out. Rather than comply with the directions given to him by the officers, Figures put the car in gear and drove away. The officers pursued Figures as he headed east on Murdock Street. The officers— who were in a marked Wichita Police Department patrol vehicle—activated their lights and sirens in an attempt to get Figures to stop.

As Figures continued to drive east, he ran a stoplight at the intersection of Murdock Street and Washington Avenue. He then failed to signal a right turn as he pulled onto southbound I-135. He also made an improper right turn not using the turning lane. At this point in the chase, Officer Walters checked his speed and reported to his supervisor that the officers were travelling 70 miles per hour trying to catch up to Figures. As a result, Officer Walters estimated that Figures was speeding because the posted speed limit was 60 miles per hour.

As Figures exited highway I-135, he failed to signal—and also crossed the center line—as he turned left onto 1st Street. Figures again failed to signal when he turned left onto Ash Street. Figures then ran a stop sign at the intersection of Ash Street and 2nd Street. Once again, he failed to signal as he turned left onto 2nd Street. Finally, Figures failed to signal before pulling over and stopping the car on the curb.

Figures then exited the vehicle and the officers placed him under arrest. Subsequently, the State charged him with fleeing or attempting to elude a law enforcement officer after being given a visual or audible signal to stop and for committing five or more moving violations during the chase. The State also charged Figures with driving with a suspended or revoked driver's license and for having an improper license plate for the vehicle he was driving.

On July 9, 2018, the district court commenced a two-day jury trial. The State presented the testimony of Officer Walters, who gave his version of the events that occurred in the early morning hours of October 24, 2015. Officer Walters identified Figures as the driver of the vehicle that had fled the scene of the traffic stop. In addition, Officer Estrada testified about his observations of the events and also identified Figures as the driver of the Lincoln Town car that had fled from the officers.

Figures testified in his own defense. He claimed that he fled the officers because he was nervous because of prior interactions he had with law enforcement officers. He also testified that he knew family members who were killed by police officers. Figures also indicated that Officer Walters' demeanor made him uncomfortable and that he decided to drive to his mother's house so there would be witnesses to the interaction. Even so, Figures admitted that he was driving a vehicle with an improper license plate and that he was driving without a current driver's license. Still, Figures asserted that he properly used his turn signal throughout the entire encounter.

After deliberation, the jury convicted Figures on all of the charges. The district court later denied a motion for a new trial filed by Figures. Ultimately, the district court sentenced Figures to a term of 14 months in prison, and he timely appealed to this court.

ANALYSIS

The issue presented on appeal is whether K.S.A. 2015 Supp. 8-1568(b)(1)(E) is unconstitutionally vague. In particular, Figures argues that the statute is vague because it does not define the meaning of the term "moving violation" and there is no consistent definition of the term in Kansas statutes. In response, the State argues that the statutory language is sufficient to provide Figures—and others—adequate notice of the proscribed conduct.

At the outset, we note that Figures failed to raise the issue before the district court. Generally, a constitutional issue not raised before the district court is deemed waived or abandoned unless: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) the district court is right for the wrong reason. *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). Under the circumstances presented, we find that a resolution of the issue presented on the merits would serve the ends of justice.

Whether a statute is constitutional presents a question of law subject to unlimited review. *State v. Williams*, 308 Kan. 1439, 1460, 430 P.3d 448 (2018). In reviewing a statute, we usually presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. In other words, we have a duty to interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

4

The party challenging the constitutionality of a statute—in this case Figures—has the burden of overcoming the presumption of constitutionality. 307 Kan. at 579.

A void for vagueness challenge is based on the due process requirement that a statute's language must convey a sufficient warning of the conduct proscribed when measured by common understanding and practice. See *State v. Jenkins*, 311 Kan. 39, 53, 455 P.3d 779, 788 (2020). To determine whether a criminal statute is unconstitutionally vague, we employ a two-part test. First, we assess whether the statute gives adequate warning of the proscribed conduct. Second, we determine whether the statute adequately guards against arbitrary and unreasonable enforcement. *Gonzalez*, 307 Kan. at 580. See *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015).

Here, the State charged Figures with felony fleeing or attempting to elude a law enforcement officer based in part on the allegation that he committed five or more "moving violations" under K.S.A. 2015 Supp. 8-1568(b)(1)(E). Figures claims that the term "moving violations" is vague. He points to the fact that K.S.A. 2015 Supp. 8-1568 does not define "moving violation," nor does it refer to any other statutory definition of the term. Moreover, Figures cites *State v. Richardson*, 290 Kan. 176, 180, 224 P.3d 553 (2010), in which it was noted that "the definition of a moving violation is not intuitive."

Nevertheless, the Kansas Supreme Court rejected a nearly identical argument to the one that Figures makes in this case. In *State v. Jenkins*—which was decided earlier this year—our Supreme Court held:

> "[A]lthough the statutory and regulatory scheme defining 'moving violation' can be described as 'complex,' to use *Richardson*'s word, because it may require reference to more than one legal provision, it is far from unconstitutionally vague. K.S.A. 2015 Supp. 8-1568(b)(1)(E), when understood in context 'provide[s] a person of ordinary intelligence with fair notice' of what conduct is forbidden. *State v. Williams*, 308 Kan. 1439, 1460, 430 P.3d 448 (2018); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294,

5

33 L. Ed. 2d 222 (1972). The conduct underlying each of the moving violations used by the jury to convict Jenkins of fleeing and eluding and felony murder was clearly prohibited by Kansas law: driving with a suspended, canceled, or revoked license (K.S.A. 2015 Supp. 8-262); failure to stop at a stop sign (K.S.A. 8-1528[b]); failure to stop at a red light (K.S.A. 2015 Supp. 8-1508[c]); failure to maintain a single lane (K.S.A. 2015 Supp. 8-1522[a]); driving in the left lane while approaching a hill, curve, intersection, or railroad grade crossing (K.S.A. 8-1519); making an unsafe turn or lane change (K.S.A. 8-1548); turning into the incorrect lane (K.S.A. 8-1545); and failing to signal a turn or lane change (K.S.A. 8-1548). Jenkins cannot meet his burden under the first prong of his vagueness challenge." *Jenkins*, 311 Kan. at 56, 455 P.3d at 790-91.

For the same reasons, Figures cannot meet his burden under the first part of the vagueness test.

Turning to the second part of the vagueness test in *Jenkins*, our Supreme Court held:

"Just as a person of ordinary intelligence can understand what the phrase 'moving violations' means, a law enforcement officer can understand the actions criminalized. The plain language of the defining statutory and regulatory provisions is clear." 311 Kan. at 56-57, 455 P.3d at 791.

Again, following the reasoning of our Supreme Court, we also conclude that Figures cannot meet his burden under the second part of the vagueness test.

Finally, Figures argues that we should apply the rule of lenity in this case. Under this rule, ambiguous criminal statutes are generally construed narrowly against the State. *State v. Williams*, 303 Kan. 750, 760-61, 368 P.3d 1065 (2016). He asserts that "had the term 'moving violation' been narrowly construed, it is unlikely the jury would have found [Figures] committed five or more moving violations during the pursuit, and would not have been guilty of the felony offense." We disagree.

6

Once again, we find guidance in our Supreme Court's decision in *State v. Jenkins*, in which it found:

"We have already said that the clear statutes and regulations governing a driver like him were not ambiguous. They were not rendered ambiguous because other statutes and regulations governing another type of driver say something else. There is nothing in this case to which the rule of lenity might apply." *Jenkins*, 311 Kan. at 57-58, 455 P.3d at 791.

Just as the Kansas Supreme Court did in *Jenkins*, we reject Figures' claim that the rule of lenity should be applied in this case.

We, therefore, conclude that K.S.A. 2015 Supp. 8-1568 is not unconstitutionally vague—either on its face or as applied to Figures—and we affirm his convictions.

Affirmed.